# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## COLUMBIA DIVISION

| | | |
|---|---|---|
| **BILLY JACK WISE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action No. 1:18-cv-00060** |
| **v.** | ) | **Judge Campbell / Frensley** |
| | ) | |
| **SOCIAL SECURITY ADMINISTRATION,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Commissioner of Social Security denying Plaintiff Disability Insurance Benefits ("DIB"), as provided under Title II of the Social Security Act ("the Act"). The case is currently pending on Plaintiff's Motion for Judgment on the Administrative Record. Docket No. 18. Plaintiff has filed an accompanying Memorandum. Docket No. 19. Defendant has filed a Response, arguing that the decision of the Commissioner was supported by substantial evidence and should be affirmed. Docket No. 23.

For the reasons stated below, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

1

# I. INTRODUCTION

Plaintiff filed his application for Disability Insurance Benefits ("DIB") on July 1, 2016,[1] alleging that he had been disabled since December 15, 2015, due to chronic back pain. *See, e.g.,* Docket No. 14, Attachment ("TR"), pp. 129-30, 151. Plaintiff's application was denied both initially (TR 50) and upon reconsideration (TR 62). Plaintiff subsequently requested (TR 73-74) and received (TR 23-44) a hearing. Plaintiff's hearing was conducted on April 16, 2018, by Administrative Law Judge ("ALJ") David Ettinger. TR 23. Plaintiff and vocational expert ("VE"), Charles Wheeler, appeared and testified. *Id.*

On May 1, 2018, the ALJ issued a decision unfavorable to Plaintiff, finding that Plaintiff was not disabled within the meaning of the Social Security Act and Regulations. TR 8-18. Specifically, the ALJ made the following findings of fact:

> 1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2016.
>
> 2. Through December 31, 2016, the claimant engaged in substantial gainful activity during the following periods: December 15, 2015, the alleged onset date, through September 14, 2016. (20 CFR 404.1520(b) and 404.1571 *et seq.*).
>
> 3. However, there has been a continuous 12-month period(s) during which the claimant did not engage in substantial gainful activity. The remaining findings address the period(s) the claimant did not engage in substantial gainful activity.
>
> 4. Through the date last insured, the claimant had the following severe impairments: cervical and lumbar degenerative disc disease. (20 CFR 404.1520(c)).

---

[1]Plaintiff protectively filed his application on June 30, 2016. TR 11.

5.      Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

6.      After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except he cannot more than frequently climb, balance, stoop, kneel, crouch or crawl.

7.      Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

8.      The claimant was born on September 3, 1957 and was 59 years old, which is defined as an individual of advanced age, on the date last insured (20 CFR 404.1563).

9.      The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

10.     Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

11.     Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).

12.     The claimant was not under a disability, as defined in the Social Security Act, at any time from December 15, 2015, the alleged onset date, through December 31, 2016, the date last insured (20 CFR 404. 1520(g)).

TR 13-18.

On May 22, 2018, Plaintiff timely filed a request for review of the hearing decision.  TR

3

123-25.  On June 28, 2018, the Appeals Council issued a letter declining to review the case (TR

1-3), thereby rendering the decision of the ALJ the final decision of the Commissioner.  This

civil action was thereafter timely filed, and the Court has jurisdiction.  42 U.S.C. § 405(g).  If the

Commissioner's findings are supported by substantial evidence, based upon the record as a

whole, then these findings are conclusive.  *Id.*

## II.  REVIEW OF THE RECORD

The parties and the ALJ have summarized and discussed the medical and testimonial

evidence of record.  Accordingly, the Court will discuss those matters only to the extent

necessary to analyze the parties' arguments.

## III.  CONCLUSIONS OF LAW

### A.  Standard of Review

This Court's review of the Commissioner's decision is limited to the record made in the

administrative hearing process.  *Jones v. Sec'y of Health & Human Servs.*, 945 F.2d 1365, 1369

(6th Cir. 1991).  The purpose of this review is to determine: (1) whether substantial evidence

exists in the record to support the Commissioner's decision, and (2) whether any legal errors

were committed in the process of reaching that decision.  *Landsaw v. Sec'y of Health & Human

Servs.*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept

as adequate to support the conclusion."  *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389 (6th Cir.

1999), *citing Richardson v. Perales*, 402 U.S. 389, 401 (1971).  "Substantial evidence" has been

further quantified as "more than a mere scintilla of evidence, but less than a preponderance."

*Bell v. Comm'r of Soc. Sec.,* 105 F.3d 244, 245 (6th Cir. 1996), *citing Consol. Edison Co. v.*

4

*N.L.R.B.,* 305 U.S. 197, 229 (1938).

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). In fact, even if the evidence could also support a different conclusion, the decision of the ALJ must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389, *citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). If the Commissioner did not consider the record as a whole, however, the Commissioner's conclusion is undermined. *Hurst v. Sec'y of Health & Human Servs.*, 753 F.2d 517, 519 (6th Cir. 1985), *citing Allen v. Califano,* 613 F.2d 139, 145 (6th Cir. 1980).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnoses and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience. *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965).

## B.  Proceedings At The Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Substantial gainful activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he

5

or she applied.  42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step

sequential evaluation process summarized as follows:

> 1.  If the claimant is working and the work constitutes
>     substantial gainful activity, benefits are automatically
>     denied.
>
> 2.  If the claimant is not found to have an impairment which
>     significantly limits his or her ability to work (a "severe"
>     impairment), then he or she is not disabled.
>
> 3.  If the claimant is not working and has a severe impairment,
>     it must be determined whether he or she suffers from one of
>     the "listed" impairments or its equivalent.[2]  If a listing is
>     met or equaled, benefits are owing without further inquiry.
>
> 4.  If the claimant does not suffer from any listing-level
>     impairments, it must be determined whether the claimant
>     can return to the job he or she previously held in light of his
>     or her residual functional capacity (e.g., what the claimant
>     can still do despite his or her limitations).  By showing a
>     medical condition that prevents him or her from returning
>     to such past relevant work, the claimant establishes a prima
>     facie case of disability.
>
> 5.  The burden then shifts to the Commissioner to establish the
>     claimant's ability to work by proving the existence of a
>     significant number of jobs in the national economy which
>     the claimant could perform, given his or her age,
>     experience, education, and residual functional capacity.

*See, e.g.* 20 CFR §§ 404.1520, 416.920.  *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th

Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by

relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the

---

[2] The Listing of Impairments is found at 20 CFR § 404, Subpt. P, App. 1.

claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. *Moon*, 923 F.2d at 1181; 20 CFR § 404, Subpt. P, App. 2, Rule 200.00(e)(1), (2). *See also Damron v. Sec'y of Health & Human Servs.*, 778 F.2d 279, 281-82 (6th Cir. 1985). Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination. *Id.* In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's prima facie case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments: mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. § 423(d)(2)(B).

### C. Plaintiff's Statement Of Errors

Plaintiff contends that: (1) the ALJ erred by failing to evaluate the opinion of Dr. Ernest Faust, Plaintiff's treating chiropractor, "at all, much less consistent with the regulations, Agency policy, and Sixth Circuit precedent"; and (2) "the opinion of the Agency's nonexamining consultant is not substantial evidence to support the ALJ's denial of benefits." Docket No. 19. Accordingly, Plaintiff maintains that, pursuant to 42 U.S.C. § 405(g), the Commissioner's decision should be reversed, or in the alternative, remanded. *Id*.

Sentence four of § 405(g) states as follows:

7

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (6th Cir. 1994).

**1. The ALJ Failed to Evaluate the Opinion of Dr. Ernest Faust, Plaintiff's Treating Chiropractor**

Plaintiff contends that the ALJ failed to in any way consider the opinion of Dr. Faust, his treating chiropractor. Docket No. 19 at 5. Plaintiff argues that the ALJ must consider all medical opinions, must articulate the basis for accepting or rejecting medical opinion evidence, and the ALJ's reasons must be supported by the record. *Id.* at 5-8. Plaintiff further asserts that the ALJ should give more weight to a medical professional who either has reasonable knowledge of Plaintiff's injury, is Plaintiff's treating physician, or has treated Plaintiff "a number of times." *Id.* at 7-8. Plaintiff contends that the ALJ's failure to acknowledge that Dr. Faust was a treating source and failure to mention Dr. Faust's opinion, "let alone provide any legally sufficient rationale for rejecting it," is not harmless error. *Id.* at 7-8. Ultimately, Plaintiff argues that the

8

ALJ's failure to mention Dr. Faust's opinion makes it impossible to determine whether the ALJ

considered and rejected it, was aware of it, or simply overlooked it. *Id*. at 8-9. Plaintiff,

therefore, maintains that the ALJ's determination that Plaintiff could perform medium exertion

work with frequent postural limitations, in the absence of any evidence that the ALJ knew about

or considered the opinion of Dr. Faust, cannot be sustained because meaningful judicial review is

impossible such that the only appropriate remedy is remand. *Id.*

Defendant responds that the ALJ's failure to discuss Dr. Faust's letter is harmless error

because: (1) Dr. Faust had not seen Plaintiff since October 2014, which was "over a year prior to

Plaintiff's alleged onset date and two years before he stopped performing SGA"[3]; (2) Dr. Faust's

letter explicitly said "he could not provide a current assessment of Plaintiff's ability to function";

(3) "Dr. Faust did not provide an opinion that Plaintiff could not perform medium work or

frequent postural activities"; and (4) "consistent with Dr. Faust's opinion, the ALJ found that

Plaintiff could not return to his past work as a construction worker and dry waller." Docket No.

23 at 8-9, *citing* TR 13, 15-17, 214-15. Defendant also argues that Dr. Faust's letter stating

Plaintiff could not perform "very heavy and heavy work" is consistent with ALJ's determination

that "Plaintiff could perform medium work." *Id.* at 9. Defendant concludes that the ALJ's

omission of Dr. Faust's letter does not impact the ALJ's ultimate determination. *Id.*

With regard to the evaluation of medical evidence, the Code of Federal Regulations

states:

> Regardless of its source, we will evaluate every medical opinion
> we receive. Unless we give a treating source's opinion controlling
> weight under paragraph (c)(2) of this section, we consider all of the

---

[3] "SGA" is substantial gainful activity.

9

following factors in deciding the weight we give to any medical opinion.

(1) Examining relationship. Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.

(2) Treatment relationship. Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques *and is not inconsistent with the other substantial evidence in your case record*, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the opinion. . . .

(3) Supportability. The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion . . . .

(4) Consistency. Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.

(5) Specialization. We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.

. . .

20 CFR § 416.927(c) (emphasis added). *See also* 20 CFR § 404.1527(c).

The ALJ must articulate the reasons underlying his decision to give a medical opinion a

specific amount of weight. *See, e.g.,* 20 CFR § 404.1527(d); *Allen v. Comm'r of Soc. Sec.*, 561

F.3d 646 (6th Cir. 2009); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). The

10

reasons must be supported by the evidence and must be sufficiently specific so as to make clear to any subsequent reviewers the weight the ALJ gave to the treating source medical opinion and the reasons for that weight. SSR 96-2p.

The Sixth Circuit has held that, "[p]rovided that they are based on sufficient medical data, the medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002), *quoting Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985). If the ALJ rejects the opinion of a treating source, however, he is required to articulate some basis for rejecting the opinion. *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987). The Code of Federal Regulations defines a "treating source" as:

> [Y]our own physician, psychologist, or other acceptable medical
> source who provides you or has provided you, with medical
> treatment or evaluation and who has, or has had, an ongoing
> treatment relationship with you.

20 CFR § 404.1502.

Although Plaintiff is correct in his assertion that the ALJ failed to discuss the letter from Dr. Faust, there are circumstances when this may constitute harmless error: (1) if a treating source opinion is so patently deficient that the ALJ could not possibly credit it; (2) if the ALJ adopts the opinion or makes findings consistent with the opinion; and/or (3) if the ALJ has complied with the goal of 20 CFR § 1527(d), by analyzing the physician's contradictory opinions or by analyzing other opinions of record. *See, e.g., Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010); *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470-72 (6th Cir. 2006); *Hall v. Comm'r of Soc. Sec.*, 148 F. App'x 456, 464 (6th Cir. 2006).

11

Dr. Faust's letter states in its entirety:

> Mr. Wise was a patient in my office from July 2, 1988 until I retired on October 31, 2014. He was last seen in my office on September 20, 2014. Prior to moving to Middle Tennessee, he was seen by Dr. Merlyn Green in Salinas CA.
>
> Mr. Wise has a chronic spinal condition that has consistently required frequent chiropractic treatments to manage. His condition was usually aggravated by his work involving very physical activity (construction and dry wall). His lower back was usually involved but often his upper back and neck also required treatment. Mr. Wise also saw other Chiropractors in the area that were more convenient to his home or work.
>
> Because it is [*sic*] been almost approximately 3 1/2 years since I have seen Mr. Wise, I do not feel I can evaluate his present condition in relation to his work activities.
>
> In summary, it is my opinion that because of his repeated injuries through the years, Mr. Wise's spinal condition could easily worsen and become unmanageable by conservative chiropractic treatment.

TR 215.

Plaintiff's last treatment with Dr. Faust occurred on September 20, 2014, over a year before Plaintiff's alleged onset date of December 15, 2015; Dr. Faust had not seen Plaintiff in the three and a half years prior to the issuance of the letter; and Dr. Faust did not feel that he could "evaluate [Plaintiff's] present condition in relation to his work activities." *Id.* Dr. Faust's letter is not from a relevant time period, does not add anything to the record, and does not contain anything that could change the ALJ's decision. Thus, the ALJ's failure to mention or discuss Dr. Faust's letter constitutes harmless error.

Moreover, the ALJ determined that, through the date last insured, Plaintiff was unable to return to his past work. TR 16. In reaching his determination, the ALJ discussed: (1) the 2007

12

hospital notes regarding Plaintiff's hernia (TR 14); (2) the medical records from Dr. Upchurch

(TR 15); (3) chiropractor notes from October 2017 (TR 15); and (4) medical notes from Dr.

Morse (TR 15-16). The ALJ also stated:

> A review of the claimant's earnings records; the claimant's
> testimony as to the duration, earnings, and duties performed while
> employed; and the vocational expert's testimony with regard to the
> DOT descriptions, exertional levels, and skill levels established
> that the following positions constitute the claimant's past relevant
> work:

| *Occupation Name* | *Dictionary of Occupational Titles DOT #* | *Exertional Strength Level per DOT* | *Specific Vocational Preparation Skill Rating per DOT* |
|---|---|---|---|
| Drywall Installer | 842.361-030 | Medium Exertion | Skilled, SVP 7 |
| Construction Worker | 869.664-014 | Heavy Exertion | Semiskilled, SVP 4 |

> The claimant performed these jobs within the past fifteen years,
> performed these jobs for a sufficient duration to acquire the
> necessary skills, and performed these jobs at substantial gainful
> activities level, which would qualify them as past relevant work.
> The vocational expert concluded that based on the assigned
> residual functional capacity, the claimant would be excluded from
> his past relevant work.

TR 16-17.

The ALJ's determination that Plaintiff cannot participate in his past work is consistent

with Dr. Faust's statement that "his condition was usually aggravated by his work involving very

physical activity (construction and dry wall)." TR 215. Also consistent with Dr. Faust's

statement that "his condition was usually aggravated by his work involving very physical

activity," the ALJ ultimately determined:

13

After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except he cannot more than frequently climb, balance, stoop, kneel, crouch or crawl.

TR 14.

As discussed, Dr. Faust's letter does not address impairments during a relevant time period and the ALJ's determination of Plaintiff's RFC is consistent with Dr. Faust's letter. TR 16, 215. Accordingly, the ALJ's failure to discuss Dr. Faust's letter constitutes harmless error; Plaintiff's argument fails.

## 2. The Opinion of the Agency's Nonexamining Consultant is Not Substantial Evidence

Plaintiff contends that the ALJ could not rely on the opinion of Dr. Montague-Brown, the State Agency medical reviewer at the reconsideration level, as substantial evidence because Dr. Montague-Brown rendered an opinion before Plaintiff submitted at the hearing Dr. Faust's letter; a medical source statement from, Dr. Morse, his primary care physician; February 2016 acupuncture treatment records, and October 2017 chiropractic treatment records. Docket No. 19 at 9-11. Plaintiff argues that these combined records demonstrate that he has sought treatment over the years for chronic back pain and that he has work-related limitations. *Id.* at 11. Plaintiff maintains that because Dr. Montague-Brown did not have these records when she rendered her determination at the reconsideration level and because the ALJ accorded "great weight" to Dr. Montague-Brown's opinion that Plaintiff could perform medium exertion work, remand is warranted. *Id.*

Plaintiff argues the ALJ had a duty to evaluate the extent to which Dr. Montague-Brown was familiar with the information in the record, but the ALJ ignored this duty by giving "great

14

weight" to her opinion. *Id.* Plaintiff asserts that "the ALJ erred by failing to acknowledge the

limited access the Agency's consultant had to the record; considering the amount of evidence that

was subsequently developed the opinion is not substantial evidence to support the RFC." *Id.* at

12. Additionally, Plaintiff maintains the ALJ has a duty to develop a full and fair record and

therefore could have "re-contacted any of the medical sources, sent the complete file back to the

Agency's consultants for an updated review, or even obtained a review of the record and

testimony from a medical expert." *Id.* Plaintiff argues that the ALJ's "lay opinion" is not

substantial evidence. *Id.* Ultimately, Plaintiff contends, "[c]onsidering the Agency's limited

record at the initial and reconsideration levels, reliance on the consultants' opinions to deny

benefits was unwarranted; the reality is that the RFC is primarily, and impermissible, based on

the ALJ's lay opinion," such that "the only appropriate remedy for the ALJ's error is remand."

*Id.* at 13.

      Defendant responds that Plaintiff fails to explain the significance of the exhibits

submitted at the hearing, after Dr. Montague-Brown had considered the record. Docket No. 23,

p. 11. Defendant argues that all but two of the of the exhibits Plaintiff submitted at the hearing

were not related to the relevant time period, and that of the two that were related, only one was

"new and relevant." *Id., referencing* TR 215-19, 224-26, 227-29, 230-32.[4] Defendant maintains

that the one exhibit that was new and relative to the correct time period was a medical note

---

    [4] The exhibits that were either dated before the onset date or after the insured period and therefore not in the relevant time period were: (1) Dr. Faust's letter and treatment notes (TR 215-19); (2) 2007 hospital records regarding Plaintiff's hernia (TR 227-29); (3) Dr. Morse's opinion (TR 230-32); and (4) chiropractor notes from October 2017 (TR 224-26). *Id.* at 11.
    The exhibit from the relevant time period that was not new evidence was Dr. Upchurch's records. *Id.* This exhibit was in the record that Dr. Montague-Brown reviewed and a duplicate copy was submitted at the hearing. *Id.*

provided by Dr. Hunter "which included Plaintiff's admission that he felt 'great' and no objective findings." *Id., referencing* TR 220-23. Defendant argues this information would not have altered Dr. Montague-Brown's opinion that Plaintiff could participate in a range of medium work. *Id.* at 12.

Additionally, in response to Plaintiff's statement that the ALJ failed to fully develop the record and should have obtained medical expert testimony or re-contacted Plaintiff's treating physicians for medical opinions, Defendant argues: (1) "the Commissioner requested a medical opinion from Dr. Upchurch," but he "chose not to provide one"; and (2) "the Commissioner already has medical expert evidence regarding Plaintiff's impairments during the relevant time period." *Id.* at 12. Defendant also notes that the Sixth Circuit does not require the ALJ's RFC determination to mirror conclusions in certain medical evidence but instead requires the ALJ to evaluate the record as a whole and resolve conflicts in the evidence. *Id.* at 12-13. Defendant maintains the ALJ considered *inter alia*: (1) Dr. Montague-Brown's opinion; (2) Plaintiff's medical records during the relevant time period; (3) Plaintiff's work activity; and (4) Plaintiff's minimal medical treatment. TR 12-14. Defendant contends that the ALJ properly evaluated Plaintiff's disability claim, reached a supported RFC determination, presented appropriate hypotheticals to the VE that included credible limitations, and appropriately relied upon the VE's answers to the hypotheticals to conclude that Plaintiff was capable of other work existing in significant numbers in the national economy such that Plaintiff was not disabled. *Id.* at 15-16.

As an initial matter, the reconsideration opinion of State Agency reviewer Dr. Montague-Brown was based on the treatment records of Dr. Chad Upchurch. TR 53-60. The information submitted after Dr. Montague-Brown rendered her opinion included four exhibits that were not

related to the relevant time period, one exhibit that was a duplicate of Dr. Upchurch's treatment records, and one exhibit containing Dr. Hunter's medical notes.  *See* TR 212-32.  The relevant exhibit that was not seen by Dr. Montague-Brown was Dr. Hunter's medical note that Plaintiff was "feeling great."  TR 220-21.  Dr. Hunter's notation that Plaintiff was "feeling great" does not contradict Dr. Montague-Brown's opinion, and her opinion was consistent with the relevant information submitted by Plaintiff at the hearing.

Additionally, the ALJ's decision references the exhibits Plaintiff submitted at the hearing. TR 14-16.  The ALJ's reference to the exhibits submitted at the hearing demonstrates that the ALJ was aware of them when rendering his determination of Plaintiff's RFC.  Although Dr. Montague-Brown's opinion was issued prior to the submission of these exhibits at the hearing, as discussed above, only two of the exhibits were from the relevant time period: one of which was a duplicate record, and the other of which simply noted that Plaintiff was "feeling great." Moreover, both Dr. Faust's note that Plaintiff's condition was typically aggravated by heavy work and Dr. Hunter's note that Plaintiff was "feeling great," are consistent with the ALJ's ultimate determination.  The ALJ properly evaluated the evidence; Plaintiff's argument fails.

## IV.  RECOMMENDATION

For the reasons discussed above, the undersigned recommends that Plaintiff's Motion for Judgment on the Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court.  Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any

response to said objections.  Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation.  *See Thomas v. Arn,* 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72.


_____
JEFFERY S. FRENSLEY
United States Magistrate Judge


18